**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ABRAHAM ROMAN, | : : : | Civil Action No. 16-1049 (ES) |
| Plaintiff, | : : |  |
| v. | : : | OPINION |
| UNION COUNTY JAIL, et al., | : : |  |
| Defendants. | : : |  |

**SALAS, DISTRICT JUDGE**

Plaintiff Abraham Roman ("Plaintiff"), a pre-trial detainee confined at Union County Jail in Elizabeth, New Jersey at the time of filing, seeks to bring this action *in forma pauperis*. Based on his affidavit of indigence, the Court previously granted Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and ordered the Clerk of the Court to file the Complaint. (D.E. No. 7).[1]

At this time, the Court must review Plaintiff's Amended Complaint (D.E. No. 6 ("Am. Compl.")), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Amended Complaint should proceed in part.

---

[1] Plaintiff originally filed this case with the United States District Court for the District of Delaware, and that court granted the *in forma pauperis* application before transferring the matter to this District. (*See* D.E. Nos. 7, 14).

## I. BACKGROUND

Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants Union County Jail; Sergeant Patella; Officer Johnson; and Lieutenant Pantoja. The following factual allegations are taken from the Amended Complaint and are accepted for purposes of this screening only.[2] The Court has made no findings as to the veracity of Plaintiff's allegations.

### A. Claims Against Union County Jail

**1. Physical Assaults**

Plaintiff alleges that, at some point between January 2014 and April 2014, Officer Prior physically opened the door to Plaintiff's cell and woke him up to see if he wanted to attend Christian services. (*Id.* at 7). The officer then left the door open and watched as a classified "Blood" gang member, who should not have been allowed on the upper level, entered Plaintiff's cell and physically assaulted him. (*Id.*). After two minutes, Plaintiff managed to escape and was taken to the hospital for his injuries. (*Id.*).

Upon returning to the jail, Plaintiff learned from other inmates that one particular inmate, Edison Vasquez, had arranged and paid for the attack. (*Id.* at 8). Plaintiff alleges that Vasquez hired the assailant to attack him because Plaintiff had given truthful testimony that implicated Vasquez's "protégé" (and Plaintiff's co-defendant), Juan Cruz. (*Id.*). Plaintiff further alleges that Vasquez orchestrated the attack due to Plaintiff's father's close working relationship with Vasquez's alleged brother—who, according to Plaintiff, was the kingpin in Vasquez's criminal case. (*Id.*).

---

[2] Because the allegations contained in the Amended Complaint are disjointed and include several unrelated incidents, the Court has recited the facts to the best of its ability.

2

Three weeks later, an inmate informed Plaintiff that Vasquez was arranging another attack. (*Id.*). As a result, Plaintiff sought, and received, protective custody from Sergeant McKenzie. (*Id.* at 9). The next day, Plaintiff was called to testify in front of the "Classification/Courtline" about the incidents. (*Id.*). Plaintiff alleges that, between July 2014 and September 2014, he wrote to Defendant Patella to request his assistance in informing the prosecutor's office that he wished to bring criminal charges and file a restraining order against Vasquez, his wife, and the assailant who attacked him. (*Id.* at 17). Plaintiff also requested protective custody. (*Id.* at 18). Defendant Patella refused, stating that inmates in Union County cannot file criminal charges or restraining orders and that the prosecutor was not concerned with allegations of mistreatment of inmates by other inmates. (*Id.*).

In a separate incident, Plaintiff alleges that, at some point between June 2014 and August 2014, "Classification/Courtline" failed to protect him because he was transported to New Jersey state court while handcuffed to his co-defendant Juan Cruz. (*Id.* at 10). Specifically, Plaintiff alleges that he suffered a physical assault by Mr. Cruz while waiting to be escorted to the elevator and that the assault needed to be broken up by two sheriff's officers. (*Id.*). Two days later, Plaintiff went to "Courtline" to request (1) permanent placement in protective custody and (2) that criminal charges be pressed against Cruz. (*Id.* at 11). Plaintiff's requests were denied. (*Id.*).

In a final separate incident, Plaintiff alleges that, at some point between June 1, 2014 and August 31, 2014, he was assaulted a third time by Bloods gang members. (*Id.* at 11-12). Plaintiff asserts that the officer in charge was "so intensively paying attention to her cell phone, that she only noticed the attack after [another inmate] ran to her desk to alert her of what was going on." (*Id.* at 12).

### 2. Law Library

Plaintiff alleges that the "book mobile type system or system like the one currently in place where an inmate must request caselaw have been deemed by the federal courts to be woefully insufficient." (*Id.* at 14). Specifically, Plaintiff alleges that, from June 1, 2013 through June 1, 2015, he was denied photocopies and access to current case law, law articles, and forms and instructions on how to file motions, appeals, and federal cases. (*Id.* at 15). From November 1, 2014 through June 2015, inmates were completely denied access to the law library. (*Id.*). From June 10, 2013 through October 31, 2014, Plaintiff received diminished, outdated, and inconclusive information from the law library, which "caused him harm during his trial." (*Id.*). Plaintiff alleges that in February and June of 2015, the law library denied him the appropriate *in forma pauperis* forms and as a result, his § 1983 complaint was dismissed without prejudice. (*Id.* at 16). Plaintiff also raises claims regarding the inadequacies of the law library against the fourth defendant, Lieutenant Pantoja. (*Id.* at 25).

### 3. Strip Searches

Plaintiff alleges that throughout his entire incarceration at the jail, he has been subjected to illegal strip searches at least once a month. (*Id.* at 14). Plaintiff does not provide any other facts about the circumstances surrounding the searches.

### B. Officer Johnson

Plaintiff alleges that Defendant Johnson used derogatory language about Latinos and "maliciously, unlawfully and selective oppressed Mr. Roman because of his race and religion" by illegally "shaking down" Plaintiff's cell without probable cause. (*Id.* at 19). Additionally, Plaintiff witnessed Defendant Johnson reading his "discovery and other legal material." (*Id.*). Plaintiff alleges that Defendant Johnson's harassment led to Plaintiff being written up with "no

4

evidence, only lies, on multiple occasions resulting in [Plaintiff] being confined to [his] room for four hours on every write up and many times just on the spot for four hours." (*Id.* at 20).

Plaintiff also had an altercation with Defendant Johnson regarding the television volume in the recreation area during which Defendant Johnson used racist language. (*Id.* at 21). Following the altercation, Defendant Johnson was verbally reprimanded by superiors. (*Id.* at 22). Plaintiff alleges that Defendant Johnson retaliated by conducting a "search" of Plaintiff's cell during which his personal property and legal materials were damaged. (*Id.* at 22-23).

### C. Relief Sought

Plaintiff is seeking monetary relief and the following injunctive relief: (1) an injunction transferring Plaintiff from Union County Jail; (2) an "injunction to file criminal charges [and] restraining orders" against Edison Vasquez, Liliana Vasquez, and Plaintiff's assailants; (3) an injunction to allow all inmates in the jail to have access to the law library; (4) monitoring of legal mail system at the jail; and (5) an injunction to "stop the shakedowns." (*Id.* at 27).

## II. DISCUSSION

### A. Legal Standard

**1. Standards for a *Sua Sponte* Dismissal**

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner (i) is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B); (ii) seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b); or (iii) brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to dismiss *sua sponte* any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[3] To survive *sua sponte* screening for failure to state a claim,[4] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**2. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

---

[3] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

[4] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

>proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### B. Analysis

#### 1. Union County Jail

**a. Physical Assaults**

As an initial matter, the Court notes that Plaintiff sues Union County Jail under 42 U.S.C. § 1983. Because a jail is not a person subject to suit for violation of constitutional rights, this Court will dismiss all federal claims against the jail with prejudice. *See Russell v. City of Philadelphia*, 428 F. App'x 174, 177 (3d Cir. 2011); *Powell v. Cook Cty. Jail*, 814 F.Supp. 757, 758 (N.D. Ill. 1993); *McCoy v. Chesapeake Corr. Center*, 788 F. Supp. 890, 893–894 (E.D. Va. 1992).

Even if the Court were to construe these claims as against the County of Union (the "County"), Plaintiff fails to state a claim pursuant to 42 U.S.C. § 1983. A municipality cannot be held liable in a § 1983 action on a theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, liability may be imposed only where it can be shown that the municipality had a policy, regulation, custom, or practice that led to the alleged constitutional violation. *See Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013). Plaintiff's Amended Complaint describes only his personal experiences, which are insufficient to state a claim against the County. (*See* Am. Compl.). Specifically, Plaintiff fails to allege what official policy or custom of the County caused a constitutional deprivation. *See Hildebrand v.*

*Allegheny County*, 757 F.3d 99, 110–11 (3d Cir. 2014) (complaint must plead facts to support *Monell* liability); *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (to satisfy pleading standard for *Monell* claim, a complaint "must identify a custom or policy, and specify what exactly that custom or policy was"). As such, any claims against the County regarding the physical assaults that Plaintiff endured will be dismissed without prejudice. However, because Plaintiff is a *pro se* litigant and the Court is required to construe the Amended Complaint liberally, the Court will read the allegations against Union County Jail to also raise claims against individual defendants where possible.

As the Third Circuit explained in *Bistrian v. Levi*, in order to state a claim for failure to protect, be it under the Fourteenth Amendment, which applies to pre-trial detainees and convicted but-not-yet sentenced inmates, or the Eighth Amendment, which applies to sentenced prisoners, a plaintiff must plead facts which show that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the [Defendant] was deliberately indifferent to that substantial risk to his health and safety, and (3) the [Defendant's] deliberate indifference caused him harm." 696 F.3d 352, 366-67 (3d Cir. 2012). "Deliberate indifference in this context is a subjective standard: the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety. *Id.* at 367.

With regard to Officer Prior, Plaintiff alleges that Officer Prior purposefully opened Plaintiff's door and allowed a known gang member, who should not have been on Plaintiff's tier, to enter Plaintiff's cell. (Am. Compl. at 7). Plaintiff was then assaulted for two minutes by said gang member with no intervention by Officer Prior. (*Id.*). At this early screening stage, Plaintiff has alleged sufficient facts to suggest that Officer Prior placed Plaintiff in substantial risk of serious harm by allowing the gang member into his cell; that the Officer was deliberately indifferent to

the substantial risk of harm that the other inmate posed to Plaintiff; and as a result of the deliberate indifference, Plaintiff suffered severe injuries from the assault by the other inmate. Therefore, Plaintiff's failure-to-protect claim against Defendant Prior shall proceed.

Plaintiff has also alleged a sufficient failure-to-protect claim against the John and Jane Doe members of "Classification/Courtline." As stated above, between June 2014 and August 2014, Plaintiff was handcuffed to his co-defendant Juan Cruz and transported to Superior Court pursuant to an order from "Classification/Courtline." (*Id.* at 10). Prior to that time, Plaintiff had already given testimony that implicated Mr. Cruz. (*Id.* at 8). Still, Plaintiff was handcuffed to Mr. Cruz and transported to court together, which placed Plaintiff in substantial risk of serious harm. Thus, the members of "Classification/Courtline" were deliberately indifferent when they made that decision. Plaintiff was harmed by this deliberate indifference because he was assaulted by Mr. Cruz. Based on these alleged facts, Plaintiff has stated a claim for failure to protect against the Doe defendants.

With regard to the final assault that he suffered at Union County Jail, Plaintiff fails to allege sufficient facts for a failure-to-protect claim. Although Plaintiff alleges that the assault occurred because the Jane Doe officer was preoccupied on her mobile phone, such an allegation of negligence is insufficient to establish deliberate indifference. *See Burton v. Kindle*, 401 F. App'x 635, 637 (3d Cir. 2010) ("It is well established that merely negligent misconduct will not give rise to a claim under § 1983; the state defendant must act with a higher degree of intent.") (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.")). None of the facts provided suggest that the Jane Doe officer was aware of an excessive risk to Plaintiff's safety when he was just sitting in the recreation area working with another inmate. Any intended claim against the

Jane Doe Officer will be dismissed without prejudice.

### b. Body Cavity Searches

Plaintiff alleges that he is subjected to "at least" monthly body cavity searches at the jail. (Am. Compl. at 14). However, he does not provide any further information, and the circumstances surrounding the searches are unclear. For example, Plaintiff does not allege when the searches occurred or whether there is a policy pursuant to which the searches are conducted. Given the scant amount of information provided by Plaintiff, any claims related to the body cavity searches must be dismissed without prejudice under *Iqbal*. *See Iqbal*, 556 U.S. at 678 ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

### c. Law Library

Plaintiff alleges that, in February and June of 2015, the law library denied him the appropriate *in forma pauperis* forms and as a result, his § 1983 complaint was dismissed without prejudice. (Am. Compl. at 16). It is well-settled that prisoners have a right of access to the courts. *See Schreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). That right includes the right to adequate access to law libraries for the purposes of preparing and filing meaningful legal papers. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Mitchell v. Wydra*, 377 F. App'x 143, 145 (3d Cir. 2010) (citing *Bounds*). In order to establish a right-of-access violation, Plaintiff must demonstrate that: "(1) he suffered an 'actual injury' (e.g., that he lost an opportunity to pursue a nonfrivolous claim); and (2) he has no other remedy . . . that can possibly compensate for the lost claim." *Schreane*, 482 F. App'x at 676. In addition, the claim of denial "must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Monroe v. Board*, 536 F.3d 198, 205-

06 (3d Cir. 2008).

In this case, Plaintiff argues that Union County Jail's law library is inadequate because inmates are denied entry and must request case law. (Am. Compl. at 14-15). Specifically, Plaintiff alleges that, from June 1, 2013 through June 1, 2015, he was denied photocopies and access to current case law, law articles, and forms and instructions on how to file motions, appeals, and federal cases. (*Id.* at 15). Plaintiff further alleges that, from November 1, 2014 through June 2015, inmates were completely denied access to the law library. (*Id.*). Accordingly, Plaintiff contends that "diminished, outdated and inconclusive information from the law library [] caus[ed] him harm during his trial." (*Id.*).

The Court can only assume that Plaintiff is referring to his criminal trial. To the extent Plaintiff was represented by counsel in those proceedings, Plaintiff's "inability to access the library as much as he would have liked does not state an access-to-courts claim because appointment of counsel is sufficient to provide a pretrial detainee with meaningful access to courts." *Prater v. City of Philadelphia*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013). Additionally, even if Plaintiff was not represented by counsel, he fails to allege with any specificity the "harm" he suffered.

Plaintiff's claims regarding his § 1983 case before this Court are also without merit. Though Plaintiff alleges that his § 1983 claims were "dismissed without prejudice" as a result of the law library's failure to provide the proper forms, in actuality, the Court simply denied *in forma pauperi*s status and administratively terminated the action. (*See Roman v. Shaikh*, Civil Action No. 15-4257 (ES), D.E. Nos. 6-7). When Plaintiff submitted the proper forms, the Court re-opened the matter and evaluated Plaintiff's claims on the merits. (D.E. Nos. 21-22). As a result,

11

Plaintiff fails to meet the harm prong of this access-to-the-courts claim and it will be dismissed.[5]

### 2. Sergeant Patella

Plaintiff alleges that he requested Defendant Patella's assistance to contact the Union County Prosecutor to request that he or she file criminal charges against Edison Vasquez, Liliana Vasquez, and his assailants. (Am. Compl. at 17-18). Plaintiff also sought a restraining order against them. (*Id.* at 18). According to Plaintiff, Defendant Patella refused to contact the prosecutor on his behalf, which violated his right of access to the courts. (*Id.*). As previously stated, in order to state a claim for the denial of access to the courts, a prisoner must allege that his efforts to pursue a legal claim were hindered and that he suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Here, there is no suggestion by Plaintiff that Defendant Patella hindered his effort to pursue a legal claim. Though the Sergeant declined to contact the prosecutor on Plaintiff's behalf, there was nothing to prevent Plaintiff from doing so himself. Because Plaintiff fails to show hindrance with a legal claim and an actual injury, this claim cannot proceed. *Id.* at 348-55 and n.3; *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997). Additionally, the Court notes that no citizen has an enforceable right to institute a criminal prosecution. *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable

---

[5] Plaintiff asserts these inadequate law-library claims against Defendants Union County Jail and Lieutenant Pantoja, Director of Programs and Services. To the extent Plaintiff brings this claim against Union County Jail (i.e. Union County) because it employs Lieutenant Pantoja, that claim must fail because a municipality cannot be held liable in a § 1983 action on a theory of *respondeat superior*. *See Monell*, 436 U.S. at 694. To the extent Plaintiff names the Jail because of an unidentified policy, that claim would also fail because "in order for municipal liability [for a custom or policy] to exist, there must still be a violation of the plaintiff's constitutional rights." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992)); *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 238 n. 15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."). Here, there was no such violation.

interest in the prosecution or nonprosecution of another."). The claim against Defendant Patella will be dismissed.

**4. Officer Johnson**

Plaintiff alleges several incidents with Defendant Johnson, as detailed above, that are not related to any of the other defendants or claims contained in the Amended Complaint.

Rule 18(a) controls the joinder of claims. In general, "[a] party asserting a claim . . . may join as independent or alternative claims, as many claims as it has against an opposing party." FED. R. CIV. P. 18. Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20. *See also McDaniel v. Lanigan*, No. 12–3834, 2012 WL 5880371, at *3 (D.N.J. Nov. 21, 2012) (claims by prisoners are not exempt from Rules 18 and 20). The requirements under Rule 20 are to be liberally construed in the interest of convenience and judicial economy. *See Paladino v. Newsome*, No. 12–2021, 2012 WL 3315571, at *5 (D.N.J. Aug. 13, 2012).

But this standard, however liberal, "is not a license to join unrelated claims and defendants in one lawsuit." *Id.* (citing *Pruden v. SCI Camp Hill*, 252 F. App'x 436 (3d Cir. 2007) (per curiam)); *see also Miller v. Lanigan*, No. 12–4470, 2013 WL 1750138, at *2 (D.N.J. Apr. 23, 2013) (stating that a plaintiff cannot "lump" all his challenges into a single pleading in violation of Rule 18 and 20). In a case of misjoinder, a court may not simply dismiss a suit altogether. *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006). Instead, the court has two remedial options: (1) drop the misjoined parties on such terms as are just; or (2) sever and proceed with each

claim separately.  *Id.*

Because the claims against Defendant Johnson do not arise from the same transaction or occurrence and there appears to be no common question of law or fact, the Court finds that the claims are misjoined.  *See* FED. R. CIV. P. 20; *see also Aristeo v. Raines*, No. 15-4115, 2016 WL 430568, at *12 (D.N.J. Feb. 3, 2016) (severing pro se complaint into two separate causes of action where the cases appeared to have been misjoined).  As such, the Court will direct the Clerk of the Court to sever the claims against Defendant Johnson into a new civil action.  *See Alfred v. New Jersey*, 2015 WL 4138882, at *2-3 (D.N.J. July 9, 2015) ("Rule 20's requirements are to be liberally construed in the interest of convenience and judicial economy.").

**III. CONCLUSION**

For the reasons stated above, Plaintiff's claims against Defendant Union County Jail are dismissed with prejudice.  Plaintiff's failure-to-protect claims against Officer Prior and the John and Jane Doe members of the Union County Jail's "Classification/Courtline" are permitted to proceed at this time.  Plaintiff's claims against Defendant Johnson will be severed from this action, and the Clerk of the Court will be instructed to open a new civil action for Plaintiff to pursue these claims should he wish.  All other claims are dismissed without prejudice.  An appropriate order follows.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**